Diane PRICE, Stephen Neal, Larry
Carrico and Arletta Kennedy,
Appellants,

v.

COMMONWEALTH of Kentucky, TRANS-
PORTATION CABINET and Fred N.
Mudge, Secretary of Transportation, Ap-
pellees.

No. 95–CA–002207–MR.

Court of Appeals of Kentucky.

Aug. 23, 1996.

Discretionary Review Denied by
Supreme Court June 11, 1997.

Dennis Franklin Janes, Segal, Isenberg, Sales, Stewart, Cutler & Tillman, Louisville, for appellants.

Gerald L. Baldwin, Denise H. McClelland, Maryellen B. Mynear, Frost & Jacobs, Lexington, for appellees.

Before EMBERTON, JOHNSON and MILLER, JJ.

### OPINION

JOHNSON, Judge:

Diane Price, Stephen Neal, Larry Carrico, and Arletta Kennedy (the appellants), appeal from a judgment of the Franklin Circuit Court dismissing their case against the appellees, Commonwealth of Kentucky, Transportation Cabinet, and Don C. Kelly[1] in his

---

1. Fred N. Mudge, the current Cabinet Secretary,     has been substituted as a party for Don C. Kelly.

capacity as Secretary of Transportation (the Commonwealth), due to lack of standing. We reverse and remand.

On June 17, 1994, the Kentucky General Assembly enacted House Bill No. 2, Part XI, Section E, sometimes referred to as "Part XI of Chapter 5 of the Acts of the First 1994 Extraordinary Legislative Session" (the Bill). Contained in the Bill was an authorization for the expenditure of $2 million from the surplus revenue of the general fund during the 1994–95 and 1995–96 school years for transportation of nonpublic school students. Following passage of the Bill, the Cabinet adopted a new regulation to establish a procedure for distribution of the funds provided by the Bill. As provided in part by 600 Kentucky Administrative Regulations (KAR) 5:010:

> Any fiscal court which provided financial support for the transportation of nonpublic school students in school year 1994–95 pursuant to the provisions of KRS 158.115 may make application to the Transportation Cabinet for reimbursement of that financial support.

600 KAR 5:010 § 1(1).

> Any fiscal court which provided financial support for the transportation of nonpublic school students in and for school year 1995–96 pursuant to the provision of KRS 158.115, may make application to the Transportation Cabinet for funds to reimburse the local funds provided for this purpose, if there are sufficient excess general funds available for this purpose.

600 KAR 5:010 § 2(1).

On May 11, 1995, the Governor of the Commonwealth adopted the proposed regulation as emergency administrative regulation 600 KAR 5:010(E) to allow the funds designated for the 1994–95 school year to be distributed before the end of the fiscal year on June 30, 1995.

The appellants, who are residents and taxpayers of the Commonwealth of Kentucky, filed a declaratory judgment action in the Franklin Circuit Court on May 12, 1995, seeking entry of a restraining order, temporary injunction, permanent injunction and declaratory judgment barring payment of any funds pursuant to House Bill No. 2, Part XI, Section E and the regulations. The appellants argued that the expenditure was unconstitutional in that it benefitted students of nonpublic schools only. Although $1,559,-460.30 had been approved for payment to seventeen fiscal courts, the Cabinet agreed to defer distribution of the funds pending consideration of the parties' arguments. The circuit court ruled that the appellants lacked standing to maintain the action and entered its judgment dismissing the appellants' action on August 9, 1995. The Cabinet disbursed the previously approved payments on the day judgment was entered. This appeal followed.

■ The Commonwealth contends that the appeal should be dismissed as moot. Although payment has already been made for the 1994–95 school year pursuant to the terms of 600 KAR 5:010(E), payments for the 1995–96 school year are still pending pursuant to the terms of 600 KAR 5:010, whereby the issues raised in this appeal are not moot. Further, in recognition of the fact that historically the Legislature has approved various expenditures pursuant to KRS 158.115, we view this issue to be a matter that is likely to continue to come before the Legislature whereby it is not moot. *See Philpot v. Haviland,* Ky., 880 S.W.2d 550, 551 (1994); and *Philpot v. Patton,* Ky., 837 S.W.2d 491, 494 (1992).

■ In dismissing this action for lack of standing the circuit court held that appellants had "not shown a personal injury or threat of injury sufficient to confer standing." Citing *Second Street Properties Inc. v. Fiscal Court of Jefferson County,* Ky., 445 S.W.2d 709, 716 (1969), the circuit court stated that for a party to have standing to challenge the constitutionality of a state expenditure under Kentucky law the party must show "not only that the legislation is invalid, but also that the party has sustained or anticipates sustaining a direct injury from the allegedly unconstitutional legislation."

*Second Street Properties* involved a class action suit by Jefferson County taxpayers which challenged on various grounds the constitutionality of a state statute that autho-

rized the collection of a hotel room tax to be expended for the establishment of "tourist and convention commissions" in counties that contained a city of the first class. In other counties, the revenues generated by the tax could also be used for "recreational" purposes. The former Court of Appeals considered all of the taxpayers' constitutional challenges on the merits except their contention that since the statute improperly distinguished between Jefferson County and other counties as to the use for recreational purposes, it constituted special legislation. The Court concluded that the Jefferson County taxpayers did not have standing to challenge the promotion of recreational activity because that burden "may be imposed on taxpayers in other counties, not on appellant." *Id.* at 716.

In the case before us, in finding lack of standing the circuit court also relied on federal standing cases that are not applicable to a state taxpayer action.[2,3]

The parties agree that the fact that this action involves the propriety of the expenditure of state funds rather than the assessment of a tax is irrelevant. *Beauchamp v. Silk,* 275 Ky. 91, 94, 120 S.W.2d 765 (1938). However, there is a sharp disagreement as to taxpayer standing to challenge the constitutionality of the state expenditure. While the Commonwealth is adamant that mere status as a taxpayer alone does not confer standing, the case law supports taxpayer standing. From the more recent case of *Gillis v. Yount,* Ky., 748 S.W.2d 357 (1988), to cases from the last century, Kentucky has consistently recognized taxpayer standing to challenge the constitutionality of city, county and state taxes and expenditures.

The landmark case of *Russman v. Luckett,* Ky., 391 S.W.2d 694 (1965), addresses the issue of taxpayer standing to challenge the constitutionality of a state taxing statute. *Russman* involved a taxpayers' lawsuit against the Commissioner and Department of Revenue for the Commonwealth of Kentucky

seeking a declaration of rights and injunctive relief to rectify the state's unconstitutional failure to assess all property at its fair cash value. The Court cited *State Text–Book Commission v. Weathers,* 184 Ky. 748, 213 S.W. 207 (1919), *Elam v. Salisbury,* 180 Ky. 142, 202 S.W. 56 (1918) and *Gay v. Haggard,* 133 Ky. 425, 118 S.W. 299 (1909), in support of its holding that the state taxpayer had standing. While none of the these cases addresses the issue of *state* taxpayer standing, the *Russman* Court relied upon the cases as analogous precedent in holding that the state taxpayers had standing.

In *State Text–Book Commission v. Weathers,* 184 Ky. 748, 753, 213 S.W. 207 (1919), the former Court of Appeals upheld a citizen's right to sue the Commonwealth while alleging a statutory violation in the adoption of text books for the use of the common schools. In noting that the appellee did not allege that he was a taxpayer, the Court nevertheless held that his status as a citizen and patron of its common schools constituted a sufficient basis for standing.

In *Elam v. Salisbury,* 180 Ky. 142, 202 S.W. 56 (1918), a taxpayer brought an action against the city of Ashland and others seeking to require the proper tax assessment on certain property. In quickly dispensing with the standing issue, the former Court of Appeals stated:

There is no merit in the contention that plaintiff could not maintain this action. Without entering into a discussion of the question, it is sufficient to say that he is a citizen and taxpayer of the city of Ashland, and, as a member of the public, is interested in having all the property in the city subject to taxation properly assessed, and his right to apply for a writ of mandamus in behalf of himself and all other taxpayers, is settled by the opinions of this court in the cases of *Louisville Home Telephone Co. v. City of Louisville,* 130 Ky. 611, 113

---

2. These cases include *Taub v. Commonwealth of Kentucky,* 842 F.2d 912 (6th Cir.1988); and *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

3. For a discussion of the rationale for the use of different tests for taxpayers' actions on the federal and state level see *McKee v. Likins,* 261 N.W.2d 566, 570–571 (Minn.1977), notes three and four.

S.W. 855, and, *Gay v. Haggard,* 133 Ky. 435 [sic], 118 S.W. 299.

180 Ky. at 148, 202 S.W. 56.

In *Gay v. Haggard,* 133 Ky. 425, 118 S.W. 299 (1909), a Clark County taxpayer brought a mandamus action against the supervisor of county roads seeking to require him to comply with statutes concerning the letting of work on the public roads of the county at competitive bidding, instead of private contract. The former Court of Appeals thoroughly discussed the taxpayer's right to bring the action.

> The rule of practice concerning who may prosecute the suit is well stated in 26 Cyc. 401, thus: "The true distinction seems to be that, where the right or duty in question affects the State in its sovereign capacity as distinguished from the people at large, the proceedings must be instituted by the proper public officer, but if the general public as distinguished from the State in its sovereign capacity is affected, any member of the State may sue out the writ." Such was the practice applied and approved in the case of *Leslie County v. Wooton,* 115 Ky. 850, 75 S.W. 208, 25 R. 217. The principle in another aspect is more frequently encountered in cases where one citizen and taxpayer on behalf of others of the class brings an action to restrain the levy of a tax, or other excessive ministerial act. The cases are numerous and familiar. The right of a single taxpayer to maintain such an action is no longer in doubt. It would seem to follow that where a ministerial act was required by law to be done, which if done would inure to the benefit of the public, the tardy official might be set in motion and compelled to act by a suit by one of the public affected, suing on his own and on the behalf of the others. Nor is it necessary that the plaintiff should show a special interest to be affected by the act. The reason it is public is because all the public are equally affected by it, at least theoretically; and, if no one of the public could maintain the suit, none less than all could, which would be practically a denial of the right to sue, for it is scarcely possible that all the citizens of a county or other territory could be got to act together in any matter. Nor do we think it necessary to allege or to show that the public will sustain damage if the act is not done. By the enactment of a statute on behalf of the public creating an office, and providing an incumbent to discharge certain public functions, the Legislature has declared that the act is one beneficial to the public. That phase of the question is not issuable. The public pay the officer for his services. They pay for the work done upon the roads. It will not lie in the official's mouth to say that his performance of a statutory duty is not a matter of concern to the public, or that his neglect of it will not entail any damage upon the public. Nor can he ask that the public be relegated to criminal prosecutions for redress. The public needs roads, not fines. The fines are only one method of enforcing the discharge of official duty to the public; but the availability of that means will not prevent the employment of another that will get what the public are entitled to, and what was the purpose of the legislation in their behalf in that matter.

133 Ky. at 429–430, 118 S.W. 299.

In granting the taxpayer relief, the Court concluded by stating: "The question ... is one of [the officials'] power to do at all what it is charged they are doing, and of the right of the taxpayers to have the law executed as the Legislature has enacted it." *Id.* at 438, 118 S.W. 299.

In *Gillis, supra,* the Supreme Court made repeated reference to *Russman, supra,* with Justice Leibson in a separate concurring opinion writing: "The power of the people to challenge the constitutionality of tax legislation in the courts is established in *Russman....* The constitution is the first line of protection for our people, not the last line of retreat." *Gillis, supra* at 368.

This Court in *Rosenbalm v. Commercial Bank,* Ky.App., 838 S.W.2d 423 (1992), in quoting 74 Am.Jur.2d, *Taxpayers' Actions* § 2 (1974) at 185, recognized the elements of a taxpayer action as follows: "(1) a wrongful act on the part of a public body or its officers, (2) injury to the complaining taxpayer or to the public body, and (3) a right to seek

the relief prayed for." 838 S.W.2d at 427. The appellants have properly alleged that the expenditure is unconstitutional, that they and other taxpayers have allegedly been injured by the failure of their government to abide by the constitution and by the alleged illegal expenditure of their taxes, and they are appropriate parties as taxpayers to bring this action.

Accordingly, we hold that the appellants have properly pled sufficient facts in support of this taxpayers' action to defeat a motion to dismiss for lack of standing. This matter is reversed and remanded for further proceedings consistent with this Opinion.

All concur.

